1  **DAVID YEREMIAN & ASSOCIATES, INC.**
   David Yeremian (SBN 226337)
2  david@yeremianlaw.com
   535 N. Brand Blvd., Suite 705
3  Glendale, California 91203
   Telephone: (818) 230-8380
4  Facsimile: (818) 230-0308

5  **COUNSELONE, PC**
   Anthony J. Orshansky (SBN 199364)
6  anthony@counselonegroup.com
   9301 Wilshire Blvd., Suite 650
7  Beverly Hills, California 91210
   Telephone: (310) 277-9945
8  Facsimile: (424) 277-3727

10 *Attorneys for Plaintiff Abdullah Byanooni*

11                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA

13 | ABDULLAH BYANOONI, individually and on behalf of a class and subclass of similarly situated individuals, | Case No.: 3:12-CV-05270 RS |
|---|---|
| Plaintiff, | NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | DATE:        April 23, 2015<br>TIME:        1:30 P.M.<br>COURTROOM:  3 |
| MERRILL LYNCH, PIERCE FENNER & SMITH; BANK OF AMERICA CORPORATION; and DOES 1 through 10, inclusive, | HON. RICHARD SEEBORG |
| Defendants. | |

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION

Plaintiff Abdullah Byanooni ("Plaintiff") submits this Memorandum in Support of Final Approval of the Parties' Class Action Settlement. As discussed in Plaintiff's Motion for Preliminary Approval, the Parties' Settlement Agreement resolves all California Penal Code § 632 claims in this matter against Defendant Merrill Lynch, Pierce, Fenner & Smith, et al. ("Defendant") that occurred between August 17, 2011 through August 4, 2014. [*See* ECF No. 43, Order Certifying Provisional Settlement Class; Preliminarily Approving Class Action Settlement And Providing For Notice To The Settlement Class As Modified By the Court ("Preliminary Approval Order").]

Plaintiff brought this action on behalf of himself and all others similarly situated alleging that Defendant recorded Plaintiff and the putative class members without their knowledge and/or consent in violation of California Penal Code § 632. [Plaintiff's Complaint is attached to the Notice of Removal, ECF No. 1 ("Complaint")]. As described in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement, Defendant shall establish a settlement fund in the total amount of $7500,000.00 to resolve the claims of the class. [*See* ¶ 3 of the Parties' Settlement Agreement and Release, attached as Exhibit 3 to the Parties' Motion for Preliminary Approval.] Since 2012, the Parties have engaged in extensive discovery, depositions and motion practice. As a result of this litigation, the Parties have fully established the applicable claims and defenses necessary to fairly, reasonably, and adequately evaluate the class claims that Plaintiff sought to represent.

With this Motion, Plaintiff now seeks final approval of the Parties' Class Action Settlement because no facts have arisen that would call into question the Class Action Settlement being fair, adequate and reasonable. In fact, only one class member has requested exclusion from the settlement, and there have been no objections. As discussed in detail below, the proposed Settlement satisfies all criteria for settlement approval under Ninth Circuit authority.

## II. PROCEDURAL BACKGROUND

The Parties were only able to reach this substantial settlement with the assistance the Honorable Edward A. Infante (Ret.) after more than a year of litigation. For the purpose of clarity, Plaintiffs describes this litigation process below.

### A. PLAINTIFFS' ALLEGATIONS

Plaintiff Abdullah Byanooni initiated this action on August 17, 2012. [ECF No. 1; *see also* Yeremian Decl., ¶ 4.] Defendant answered the Complaint on October 18, 2012. [ECF No. 9.]

The Complaint alleged that Defendant violated California Penal Code § 632 by recording California consumers without the consumers' knowledge and/or consent. [ECF No. 1.] However, Defendant's Answer denied any liability for the violations alleged in Plaintiff's Complaint and contended that various defenses shielded Defendant from liability. [ECF No. 9.]

### B. DISCOVERY

The Parties vigorously litigated this matter during the discovery process. [Yeremian Decl., ¶¶ 5-7.] Plaintiff propounded numerous discovery requests including Requests for Admissions; Requests for Production of Documents; and, Special Interrogatories. [*Id*.] In addition, Plaintiff was required to respond to Defendant's discovery requests as well as review Defendant's responses to Plaintiff's discovery requests. [*Id*.] While reviewing all the information obtained in discovery, Plaintiff was required to review and analyze documents and information as well as research additional defenses proposed by Defendant in Defendant's discovery responses. [*Id*.]

### C. MEDIATION AND SETTLEMENT NEGOTIATIONS

Prior to attending formal mediation sessions with Judge Infante, the Parties engaged in informal settlement discussions to further establish and justify the Parties' respective positions. [Yeremian Decl., ¶ 7.] Said discussions included examination of the legal landscape regarding unlawful recording class actions and the settlements reached in those cases. [*Id*.] In addition, the Parties also discussed the policies and procedures instituted by Defendant in order to avoid such violations. [*Id*.]. During the full-day mediation, the Parties further discussed the applicable claims and defenses but ultimately reached a framework for the settlement terms on a class-wide basis. [*Id*.] Following mediation, the Parties continued negotiating in good faith and ultimately agreed on the preliminarily approved settlement. [*Id*.] Only after the Parties agreed on the material terms of the settlement did the Parties discuss payment of attorneys' fees, costs and Plaintiffs' incentive award. [*Id*.].

### D. PRELIMINARY APPROVAL AND CONDITIONAL CERTIFICATION

On August 4. 2014, this Court preliminarily approved the Parties' settlement agreement. [ECF No. 43]. Therein the following settlement class was provisionally certified:

> All customers of Merrill Lynch's Merrill Edge Advisory Center and self-directed online investment platform within the State of California who, on or after August 17, 2011 through the date of preliminary approval, received a telephone call from Merrill Lynch that was recorded and/or monitored.

*See* Preliminary Approval Order, ¶ 3.

As required in the preliminary approval analysis, this Court preliminarily determined that

---

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the settlement did not result from fraud, overreaching, or collusion, but instead resulted from serious, informed, non-collusive negotiations. [ECF No. 48.] Following Preliminary Approval of the settlement, the Parties' and the claims administrator, the Garden City Group, Inc. ("GCG"), have adequately performed their obligations pursuant to the Settlement Agreement. [Keough Decl., *passim.*]

### E. CLASS NOTICE DISSEMINATION

The Parties administered the notice process through the claims administrator, GCG. [Preliminary Approval Order, ¶ 7]. In accordance with the Settlement Agreement and this Court's Preliminary Approval Order, GCG provided publication notice in 2 newspapers and magazines throughout the state for a period of months which was the best notice practicable given the circumstances. [*Id*.; *see also* Keough Decl. ¶¶ 4-10.] The Class Notice provided detailed information regarding (a) class members' rights, including the manner in which objections and exclusions could be lodged; (b) the case's nature, history and progress; (c) the proposed settlement and reason for the settlement; (d) the settlement's benefits; (e) Class Counsel's requested fees and costs; (f) the Fairness Hearing's date, time and location; and, (g) Class Counsel's contact information. The estimated cost of notice, including the cost of publication, is $143,543.34. [Yeremian Decl., ¶ 9c.]

### F. RESPONSE TO CLASS NOTICE

Pursuant to the Settlement Agreement, GCG established a website dedicated to the settlement where class members could find additional information and submit claim forms online. [Keough Decl. ¶ 10.] GCG also dedicated a toll-free phone number to the settlement with an Interactive Voice Response ("IVR") system where class members could obtain information 24 hours a day, seven days a week and could also speak with live representatives. [*Id.* at ¶ 11.]

Out of all the class members that received notice, only one person has opted out of the settlement, and no one has objected to the settlement, *out of a class of 114,184*. [Yeremian Decl., ¶¶ 17-18]. Class members who have submitted timely and valid claims will receive $198.54 each. [Yeremian Decl., ¶ 13.] Class Counsel arrived at this number by subtracting both notice costs[1], class representative enhancement, and Plaintiff's attorneys' fees and costs[2] from the $750,000.00 Settlement Fund. [*Id*.] This is an excellent result.

---

[1] GCG informed Plaintiff that the total notice costs for this matter are $143,543.34. [Yeremian Decl. ¶ 9c.]

[2] For this calculation, Plaintiff used the amount requested of $187,500.00 in attorneys' fees including costs.

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### III. FINAL APPROVAL IS WARRANTED

#### A. THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Federal Courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (gathering cases). The traditional means for handling claims like those at issue here – individual litigation – would require a massive expenditure of public and private resources and, given the relatively small value of the claims of the proposed individual class members, would be impractical. Thus the proposed Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

#### B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Before granting final approval of a class action settlement, a reviewing court must first find the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A). In evaluating whether a class settlement is "fair, adequate and reasonable," courts generally refer to eight criteria, with differing degrees of emphasis: (1) the likelihood of success by Plaintiffs; (2) the amount of discovery or evidence; (3) the settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendation of neutral parties, if any; (7) number of objectors and nature of objections; and, (8) the presence of good faith and the absence of collusion. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.43 "General Criteria for Settlement Approval" (3d ed. 1992). This list is

> not exhaustive, nor will each factor be relevant in every case...The relative degree of importance to be attached to any particular factor will depend upon, and be dictated by, the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

"A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. 2009); *Garner v. State Farm Mut. Ins.*, 2010 WL 1687832, at *13 (N.D. Cal. 2010) ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced

counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."). This is because "[t]he extent of the discovery conducted to date and the stage of the litigation are both indicators of counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *Knight*, 2009 WL 248367, at *4.

In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash 2009) (same). Here, the record before the Court demonstrates that the settlement agreement satisfies the Ninth Circuit's standard and that final approval is warranted. Thus, the Parties request this Court grant the Parties' Motion for Final Approval.

> 1. **The Strength of Plaintiff's Case and the Risks, Expenses, Complexity and Likely Duration of Further Litigation**

Plaintiff continues to believe that Plaintiff's claims against Defendant have merit and that Plaintiff could make a compelling case if Plaintiff's claims were tried. If Plaintiff was to prevail, Defendant could face substantial statutory penalties. Nevertheless, it is apparent that Plaintiff and the Class would face a number of challenges if the litigation were to continue.

>> a. *Challenges to the claims on their merits*

In the Parties' Preliminary Approval Motion, Defendant identified a number of potential issues with proceeding on the merits. While Plaintiff disputes the validity of said assertions, Defendant assert that Plaintiff, and the Class Members, had no reasonable expectation of privacy because Defendant warned class members that it records all telephone calls. [Preliminary Approval Motion at p. 3.] In addition, Defendant also asserts that each consumer is informed that Defendant records telephonic communications by an automated message. [*Id*. at p. 3.] Thus, a consumer that continued speaking after receipt of the warning would have impliedly consented to said recording. [*Id*.] Based upon these contentions, Defendant denies any and all liability related to Plaintiff's Complaint. [*Id*.] While Plaintiff believes that Plaintiff would overcome these issues, the risk to the class is substantial. To reject this settlement and proceed with litigation would be highly detrimental to the class; thus, Plaintiff believes it is in the best interest of the class to accept this substantial monetary benefit and has acted accordingly by accepting said settlement.

>> b. *The risk of maintaining class action status throughout trial.*

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The benefits of settlement and a plaintiff's chances of success are typically evaluated together. *See, e.g. Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the Plaintiffs' case on the merits balanced against the amount offered in the settlement."). Through discovery and confirmatory discovery, Plaintiff believes that Plaintiff obtained sufficient information to establish that Plaintiff's class satisfies the requirements of Fed. R. Civ. P. 23; however, Defendant has focused on the issues addressed above to argue that Plaintiff and the Class Members face numerous risks in moving forward and that class treatment of this matter is inappropriate. Should this Court decline to certify Plaintiff's case as a class action, the Class Members will be forced to retain their own counsel and proceed on the basis of individual claims only.

In addition, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiff prevailed at trial, Defendant would almost certainly appeal, threatening a reversal of any favorable outcome. *See Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. 2010) ("[L]iability and damages issues – and the outcome of any appeals that would likely follow if the Class were successful at trial – present substantial risks and delays for Class Member recovery.")

Under the Settlement Agreement, the Class Members may avoid each of the risks described herein and receive substantial monetary benefits. "[T]his settlement . . . guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford*, 2010 U.S. Dist. LEXIS 29042, at *8. Thus, Plaintiff contends that the substantial risk weighs in favor of granting final approval of this matter.

### 2. **The Amount Offered in Settlement**

The Settlement requires Defendant to pay $750,000.00 into a settlement fund out of which eligible Class Members will receive their *pro rata* share of cash payments. No amount of this fund will revert back to Defendant. Given the potential issues described above, this settlement represents an outstanding result for Class Members, particularly because the Penal Code damages are purely statutory in that Class Members have not suffered any out-of-pocked losses or other economic harm.

As discussed above, Class Counsel estimate that each Class Member will receive $198.54. [Yeremian Decl., ¶ 13.] Class Counsel arrived at this number after deducting notice costs as well as Plaintiff's attorneys' fees and costs from the settlement fund.

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 3. The Extent of Discovery Completed

The Settlement was reached only after Class Counsel's thorough investigation and analysis of the factual and legal issues involved. As detailed above, Class Counsel spent significant time thoroughly investigating the factual and legal claims involved in this Action, both prior to filing this Action and during discovery. [Yeremian Decl., ¶¶ 4-7.] In addition, Defendant also provided Plaintiff with informal discovery as well as responded to confirmatory discovery to confirm that the settlement was fair, reasonable and adequate. [*Id.*]

### 4. The Experience and Views of Counsel

Class Counsel are experienced in litigating unlawful recording claims and have a keen understanding of the legal and factual issues involved in this case. [Plaintiff's Motion for Fees, filed concurrently herewith.] Based upon this experience, Class Counsel fully endorse this settlement as fair, adequate and reasonable which weighs heavily in favor of the Court approving the settlement. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.")

### 5. The Presence of a Governmental Participant

No governmental agency is directly involved in this lawsuit; however, Defendant has notified the officials designated pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 of the proposed settlements. [ECF No. 37]. To date, no governmental entity has raised objections or concerns about the Settlement.

### 6. The Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class action settlement are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2007) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529). *See also id.* (3 objections out of 75,630 notices); *Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving the district court's finding that this fairness factor weighed in favor of settlement when "only 45 of approximately 90,000 notified class members objected to the settlement"); *Rodriguez v. West Publ'g Corp.*, No. 05-3222, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10,

---

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2007) (54 objections out of 376,000 class members); *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978) (approving settlement where there were 8,000 opt outs out of 188,000).

The response by class members demonstrates widespread approval of the settlement. Out of a class of 114,184 persons, there has one zero opt-out and no objectors. [Yeremian Decl., ¶¶ 17-18]. A total of 2,085 class members submitted timely and valid claim form and will receive $198.54 each. [*Id.* at ¶ 13.] The paucity of opt-outs and absence of objectors shows that class members viewed the settlement as fair, reasonable, and adequate.

### 7. **The Presence of Good Faith, Absence of Collusion, and the Approval of a Third-Party Mediator Support Final Approval of the Settlement.**

In addition to considering the above factors, the Ninth Circuit has indicated that the Court should carefully review the settlement for any signs of collusion or conflicts of interest. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 McLaughlin on Class Actions § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added)."); and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive (emphasis added).").

As detailed above, the Settlement is the result of lengthy, adversarial arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class action cases. In addition, the Honorable Edward A. Infante (Ret.) of JAMS facilitated the final settlement of this action. [Kazerounian Decl., ¶ 7; Swigart Decl., ¶ 7;

Orshansky Decl., ¶ 7]. Accordingly, no signs of collusion or conflicts of interest are present here.

### IV. CONCLUSION

For all of the foregoing reasons, the Parties respectfully request this Court enter an Order granting final approval of the Settlement.

Dated: March 19, 2015                                                                     Respectfully submitted,

DAVID YEREMIAN & ASSOCIATES, INC.

By: ___/s/ David Yeremian___
DAVID YEREMIAN
ATTORNEY FOR PLAINTIFF ABDULLAH BYANOONI

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT